**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| **RITA F. HARMON,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   CIV-07-225-R |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of Social Security** | ) |
| **Administration,** | ) |
| | ) |
| **Defendant.** | ) |

## **O R D E R**

Before the Court are the Report and Recommendation of United States Magistrate Judge Gary M. Purcell entered September 25, 2007 [Doc. No. 17] and Plaintiff's Objection to the Report and Recommendation filed October 15, 2007 [Doc. No. 18]. In a twenty-five page Report and Recommendation the Magistrate Judge gave an extensive summary of the medical record and carefully considered the findings and conclusions of the administrative law judge (ALJ) at steps two and four of the sequential evaluation process and Plaintiff's arguments relating to the ALJ's findings and conclusions at those steps and recommended that the decision of the Commissioner of the Social Security Administrative denying Plaintiff's applications for disability insurance and supplemental security income benefits be affirmed.

In "Plaintiff's Objections to the U.S. Magistrate Judge's Report and Recommendations," Plaintiff argues that the Magistrate Judge failed to understand that degenerative joint disease is arthritis and that it is a separate disease from degenerative disc disease which the ALJ failed to include as a separate severe impairment. She also asserts that the Magistrate Judge erred in finding that the ALJ did not err in failing to consider the effect of Plaintiff's Meniere's disease because although Plaintiff's Meniere's disease is not frequently mentioned in the medical records and Plaintiff did not testify about the disease, its symptoms or its effect on her ability to work, the Magistrate Judge did not consider Plaintiff's numerous complaints of dizziness and/or tinnitus reflected in the medical record, which are symptoms of Meniere's disease. With respect to Plaintiff's depression, Plaintiff asserts that the Magistrate Judge merely gave an improper *post hoc* explanation for the ALJ's failure to discuss the evidence for his subpart B findings. Plaintiff seems to take issue with the ALJ's finding that Plaintiff's mental impairment was not severe because she had not been referred for mental treatment by pointing out that she was hospitalized <u>for dehydration and sunburn</u> and evidenced suicidal ideation at that time.

Plaintiff objected to the Magistrate Judge's conclusion that the ALJ did not err in failing to consider the Social Security clerk's observations of Plaintiff because they were not significantly probative on the ground that observations of SSA personnel <u>must</u> be considered pursuant to SSR 96-7P. The Plaintiff also takes issue with the Magistrate Judge's criticism of Plaintiff's counsel for mischaracterizing the ALJ's decision and evidentiary documents.

Next, Plaintiff suggests that the Magistrate Judge's conclusion that erosive changes of the wrist on x-ray were not significant enough to be discussed by the ALJ, pointing out that "[i]f the erosive change represents arthritis of the wrist, it is another impairment of the wrist that the ALJ ignored." Objections at p.5 (emphasis added). Plaintiff also suggests that the Magistrate Judge ignored Plaintiff's "melt down" on the job and suicidal ideation when she was hospitalized which, according to Plaintiff, "could arguably be indications of one or two episodes of deterioration or decompensation" which would require consideration of Plaintiff's mental impairments as severe at steps 2 and 3.

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ's credibility determination was supported by substantial evidence. Plaintiff then launches into a series of matters – restrictions in Plaintiff's range of motion in her neck, the existence of some free fluid in Plaintiff's abdomen which Plaintiff suggests was ascites, that Plaintiff was wearing a wrist splint at the hearing before the ALJ, Plaintiff's symptoms of persistent neck pain, tenderness to palpitation of the neck, the diagnosis of cervical radiculopathy, that the ALJ did not establish that Plaintiff's activities were done on a daily basis, that most employers would not allow employees to nap during the day, that Plaintiff often had fatigue, that family members helped Plaintiff perform some chores, and that Plaintiff was told to stop bowling – which the ALJ and/or Magistrate Judge ignored in making his credibility determination and/or in upholding the credibility determination. Plaintiff further asserts that the ALJ employed the wrong standard in assessing the credibility of Plaintiff's complaints of severe or disabling pain, requiring objective evidence of the severity of the pain rather than merely

objective medical evidence of a pain-producing impairment and a loose nexus between the pain-producing impairment and the pain alleged.

Finally, Plaintiff argues that the ALJ should have ordered a complete consultative examination (CE) of Plaintiff because the consultative examination in the record did not include a complete evaluation of the range of motion in Plaintiff's shoulders and arms, the only RFC evaluation in the record was performed by a non-examining, non-treating physician before all evidence had been submitted and there was a "conflict" between the ALJ and Plaintiff's representative concerning the severity of Plaintiff's mental limitations. Plaintiff objects to the Magistrate Judge's finding that her argument that a CE should have been ordered was frivolous.

Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court reviews the Report and Recommendation de novo in light of Plaintiff's objection. In conducting that de novo review, the Court has reviewed the entire administrative record.

Plaintiff's medical records do not contain a diagnosis of "cervical spine arthritis," degenerative joint disease or arthritis. Plaintiff's attorney did not mention any of these asserted impairments in his opening statement at the hearing before the ALJ. Plaintiff testified that the problem she was having in her cervical spine was an arthritic-type condition which was degenerative disc disease. The ALJ did not err in failing to consider "cervical spine arthritis," degenerative joint disease or arthritis as an impairment separate and in addition to Plaintiff's degenerative disc disease nor did the Magistrate Judge err in so concluding.

At the hearing before the ALJ neither Plaintiff's attorney nor Plaintiff mentioned that Plaintiff had been diagnosed as having Meniere's disease. More importantly, Plaintiff did not testify that she was or had been experiencing any dizziness or vertigo and tinnitus or ringing in the ears or, for that matter, decreased hearing, assuming that such can be related to Meniere's disease. Nor did Plaintiff testify that she was taking a medication for Meniere's disease. The Magistrate Judge accurately summarized the medical record as it relates to Meniere's disease and/or symptoms thereof. The Court agrees with the Magistrate Judge that "the medical evidence in the record did not indicate that the condition was of such severity, frequency, or duration to constitute a severe impairment . . . ." Report and Recommendation at p.13. The Court further concurs in the Magistrate Judge's conclusions that "Plaintiff has not shown that 'significantly probative evidence' was ignored in the ALJ's determination;" id. at p.12; "there is substantial evidence in the record supporting the ALJ's step two finding," id. at p.13; and "the ALJ did not err in failing to consider the effect of Meniere's disease upon Plaintiff's RFC for work." Id.

The Court has carefully reviewed the entire administrative record, the ALJ's Decision as it relates to Plaintiff's depression and that portion of the Report and Recommendation addressing Plaintiff's argument that the ALJ erred in failing to find that Plaintiff had a severe impairment due to depression and/or that depressive symptoms restricted her ability to work. The Court agrees with the analysis and conclusions of the Magistrate Judge. Even if the ALJ had considered Plaintiff's "melt down" at work and the expression of suicidal ideation at the time Plaintiff was hospitalized for sunburn and dehydration as two episodes of

5

decompensation, they were not of extended duration, see PRT (A.R. at pp.291-304) at p.11, "B" Criteria, ¶ 4, and even if they had been of extended duration, Plaintiff would not have had the degree of even one Part "B" functional limitations necessary to find that Plaintiff had a severe affective disorder. The fact that Plaintiff expressed some suicidal ideation when she was hospitalized for sunburn and dehydration does not convert Plaintiff's hospitalization into referral for mental health treatment, as Plaintiff seems to imply.

The Social Security Administration clerk's reported observations of Plaintiff that she had difficulty with coherency and concentrating and "was slow to respond to a few of the questions" the clerk asked her, Tr. at 114, were not significantly probative evidence of a mental impairment that the ALJ was required to discuss in his Decision. Not only could there be any number of reasons for the behavior observed by the clerk, including misperception by the clerk, the clerk's contact with Plaintiff was limited to one brief interview in which he or she completed a disability report (Form SSA-3367).

As to Plaintiff's objection to the ALJ's failure to discuss Plaintiff's erosive changes of the wrist on x-ray which might be indicative of arthritis and the Magistrate Judge's conclusion that these were not significant, as previously indicated, there is no diagnosis in the medical records of arthritis. Neither counsel in his opening statement at the hearing before the ALJ nor Plaintiff in her testimony at that hearing said Plaintiff had arthritis or described symptoms of arthritis. Plaintiff has not been prescribed any medications for arthritis. The changes which Plaintiff references were "[s]mall erosive changes involving the ulna styloid process . . ." Tr. at 162. If an ALJ were required to discuss every slight

6

change or deviation from the norm or normal on every x-ray, CT scan, MRI, laboratory report, etc., an ALJ's decision would amount to a repetition of the entire medical record of a claimant. The small changes in Plaintiff's wrist revealed by the x-ray in this case did not constitute significantly probative evidence that should have been discussed by the ALJ, as the Magistrate Judge so found. See Report and Recommendation at p.18.

The Magistrate Judge addressed and analyzed essentially all of the snippets of evidence in the record and testimony by Plaintiff that Plaintiff argues the ALJ ignored in making his credibility determination and that Plaintiff was not disabled but was capable of performing light work. See Report and Recommendation at pp.21-23. The Court agrees with the Magistrate Judge's analysis and conclusions. The ALJ discussed the evidence supporting his decision and Plaintiff has failed to point to any uncontroverted evidence the ALJ chose not to rely on or any significantly probative evidence he rejected which the ALJ did not discuss. Nor did the ALJ apply the wrong standard, requiring objective medical evidence of the severity of Plaintiff's pain. The ALJ specifically stated that "[a]fter considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that the claimant's statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Decision at p.5, Tr. at 18. The ALJ further found that objective medical evidence in the record and evidence of Plaintiff's daily activities contradicted Plaintiff's complaints of disabling pain. See id. at 5-6, Tr. at 18-19.

Plaintiff argues that the ALJ failed to develop the record because a consultative exam should have been ordered and was not (this is apparently a reference to a psychiatric or psychological consultative exam) and the physical consultative evaluation was "incomplete" because it did not include a complete evaluation of the range of motion in Plaintiff's arms and shoulders. The consultative physical examination was appropriate in view of the complaints, symptomatology and history expressed by Plaintiff. See Tr. at 265-71. Range of motion for Plaintiff's left shoulder abduction and forward elevation were evaluated and normal. Tr. at 269. The consultative examining physician also noted that Plaintiff's grip strength in her hands was "5/5 bilaterally" and that she had "normal ability to effectively oppose thumbs to fingertips and manipulate small objects." Tr. at 267; see Tr. at 271. No complete psychiatric or psychologic examination or evaluation of Plaintiff was warranted to develop the record in light of the medical record revealing that the Plaintiff had a history of depression under good control with anti-depressant medication, that Plaintiff had never been referred for therapy or inpatient treatment for her depression, Plaintiff's own statements about her daily activities and the state agency consultative reviewer's findings that Plaintiff exhibited only mild functional limitations in her daily living activities and social functioning as a result of depression symptoms. Tr. at 291-303 Plaintiff's objection is without merit.

In accordance with the foregoing, the Report and Recommendation [Doc. No. 17] of the Magistrate Judge is ADOPTED in its entirety and the decision of the Commissioner of the Social Security Administrative to deny Plaintiff's applications for Social Security benefits is AFFIRMED.

**IT IS SO ORDERED** this 6th day of November, 2007.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE

**IT IS SO ORDERED** this 6th day of November, 2007.

_____
DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE